

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
~~VXXXXXXXXXXXX~~
ATTORNEY GENERAL

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Dear Mr. Lawson:                          Opinion No. 0-3367

Re: Whether or not hearings under
the Securities Act, to be held
by the Secretary of State, are
to be conducted by the Secre-
tary, or his Assistant, alone,
or may the Secretary of State
legally appoint the Securities
Commissioner, or another per-
son, to preside over and con-
duct such hearings?

     You request an opinion from this Department with respect
to the construction of H. B. No. 521, Acts of the 44th Legisla-
ture, Regular Session, known as the "Securities Act", with respect
to hearings by the Secretary of State, your letter being as fol-
lows:

     "Under the provisions of House Bill Num-
ber 521, Acts of the Forty-fourth Legislature,
Regular Session, as amended, known as 'The Se-
curities Act' applicants for licenses under the
provisions thereof, if their application is
denied or rejected, are entitled to a hearing
relative to such application. Under Sections
24, 25 and 26 the Secretary of State is author-
ized to hold other hearings for the purpose of
determining whether certain securities shall
be sold and whether the license of the dealer
or salesman should be cancelled for fraud or
violation of some provisions of the Act.

     "This department would appreciate having
the benefit of your advice as to whether or not
these hearings can be held by the Secretary of
State or the Assistant Secretary of State alone
or whether such hearings may be conducted by
the Securities Commissioner provided for in such
Act or whether the Secretary of State may legally
appoint the Securities Commissioner or any other

individual to preside over and conduct such hearings.

"In the event that you should answer this question that the Securities Commissioner may conduct such hearings or that the Secretary of State may legally appoint the Securities Commissioner or some other individual to conduct such hearing, we would also appreciate having the benefit of your advice as to whether such appointment carries with it the power to render decisions in the matters involved."

Section 34 of the Securities Act (H.B. No. 521, ch. 100, Laws of 44th Legislature, p. 255) declares:

"The administration of the provisions of this Act shall be vested in the Secretary of State."

The Act provides for certain hearings before the Secretary of State, notably Section 8, as follows:

"Any issuer as the same is defined herein who is dissatisfied with any ruling or decision of the Secretary of State, may file within ten (10) days thereafter an application for a hearing before the Secretary of State who shall, within ten (10) days after the receipt of such application set said hearing for such time and place as he may fix and shall give said applicant ten (10) days' notice of such hearing."

Section 24 declars:

"The Secretary of State may, in the exercise of reasonable discretion hereunder, at any time, require a dealer to file with the Secretary of State a list of securities which he has offered for sale or has advertised for sale within this State during the preceding six (6) months, or which he is at the time offering for sale or advertising, or any portion thereof. No dealer, agent, or salesman shall sell any securities or issue or publish within this State any circular, advertisement, prospectus, program, or other matter in the nature thereof, after notice in writing has been given him by the Secretary of State that, in the Secretary of

State's opinion, the same contains any statement that is false or misleading, or otherwise likely to deceive a reader thereof, or that the sale of such security would be unfair, unjust or inequitalbe, or fraudulent, provided, however, that in each case covered by such notice in writing the dealer, agent or salesman to whom such notice is given shall be entitled to a hearing and an appeal as provided for in this Act. * * *"

Section 25 is in part as follows:

"If the Secretary of State at any time has reason to believe any dealer has in any way violated, or is violating, or about to violate any of the provisions of this Act, or has been guilty of any fraud or fraudulent practice, then the Secretary of State may, after hearing, and having reasonable cause to believe the dealer has been guilty of such offense, revoke said dealer's registration. Notice of the time and place of any such hearing shall be sent to such dealer at least seven (7) days prior thereto. * * * *"

Section 26 is as follows:

"If the Secretary of State at any time has reason to believe any salesman or agent of any dealer has in any way violated or is violating, is about to violate any of the provisions of this Act, or has been guilty of any fraud or fraudulent practice, then the Secretary of State may, after hearing, and having reasonable cause to believe that the agent or salesman has been guilty of such offense, revoke said agent's or salesman's registration. Notice of the time and place of such hearing shall be sent to such dealer and to such agent or salesman at least seven (7) days prior thereto. * * * *"

By the terms of Section 27 it is required that "All decisions of the Secretary of State shall be in writing signed by the Secretary of State, and shall fully state the grounds therefor."

As a means to the effectiveness of those hearings, Section 29 clothes the Secretary of State with the following powers:

"The Secretary of State may require, by subpoena or summons issued by the Secretary of State, addressed to the sheriff or any constable, the attendance and testimony of witnesses and the production of any books, accounts, records, papers and correspondence or other records or indices showing the names and addresses of the stockholders (except such books of account as are necessary to the continued conduct of the business, which books the Secretary of State shall have the right to examine or cause to be examined at the office of the concern and to require copies of such portion thereof as may be deemed necessary touching the matter in question, which copies shall be verified by affidavit of an officer of such concern and shall be admissible in evidence as provided in Section 31 hereof), relating to any matter which the Secretary of State has authority by this Act to consider or investigate, and for this purpose the Secretary of State may sign subpoenas, administer oaths and affirmations, examine witnesses and receive evidence, provided however, that all information of every kind and nature contained therein shall be treated as confidential by the Secretary of State and shall not be disclosed to the public except under order of court, but nothing in this section shall be interpreted to prohibit or limit the publication of rulings or decisions of the Secretary of State. In case of disobedience of any subpoena, or of the contumacy of any witness appearing before the Secretary of State, the Secretary of State may invoke the aid of the District Court within whose jurisdiction any witness may be found, and such court may thereupon issue an order requiring the person subpoenaed to obey the subpoena or give evidence, or produce books, accounts, records, papers, and correspondence touching the matter in question. Any failure to obey such order of the court may be punished by such court as a contempt thereof.

"The Secretary of State may in any investigation cause the deposition of witnesses residing within or without the State to be taken in the manner prescribed for depositions in civil actions under the laws of Texas.

"* * * * *"

By the terms of Article 4340, Revised Civil Statutes, as amended by the 40th Legislature, 1927, the office of Assistant Secretary of State is created, and such Assistant is authorized to "perform all the duties required by law to be performed by the Secretary of State when the said Secretary of State is absent or unable to act for any reason. Such Assistant shall perform such other duties as shall be required of him by the Secretary of State and his compensation shall be $4,000.00 per annum."

The proper construction of these statutes requires the holding that no person is authorized to hold the hearings mentioned in the Securities Act except the Secretary of State and the Assistant Secretary of State.

It is elementary law that a public officer may not delegate to another the authority to perform those official duties involving official discretion, which have been imposed upon him.

Where, as here, there is a deputy officer or assistant who is clothed with the power to perform the duties of his principal, such deputy or assistant does not perform such duties by virtue of any principle of delegation of powers, but in his own right in virtue of the same authority investing his principal with power -- that is, the Legislature.

Pfeffer v. Mahnke, 260 S.W. 1033, by our Supreme Court, definitely settles this question. It is there said:

> "The service of the secretary of State and the comptroller on the board of education is the performance by each of a duty attached by the statute to the office held by each. The duties are not personal. They are duties attached to the offices. Any holder of the office of secretary of state or comptroller must serve as a member of the board of education as a part of the duties of those offices respectively. Since the statutes provide that the chief clerks may respectively perform the duties attaching to those offices, the chief clerks may, in the contingencies mentioned in the statutes, perform the particular duties attaching to the offices of secretary of state and comptroller by virtue of the statutes making them members of the board of education. In such cases the chief clerks do not perform those duties by delegation of authority from their chiefs. They perform them by virtue of authority of the Legislature in the same way

that their chiefs are authorized to perform them. The Legislature could have provided that, in the absence, etc., of the secretary of state and comptroller, the chief clerks of either or each should be members of the board of education. The Legislature has done the same thing in a different way by prescribing that the chief clerks provided by statute shall and may, in the absence of the secretary of state and the comptroller, perform the duties of those officers, among which are duties arising from their membership on the state board of education. Thus the chief clerks are officers provided by statute, and authorized by statute, to perform the duties attaching to the officers of secretary of state and comptroller, making those officers members of the board of education. The full authority of the chief clerks thus to act arises from the acts of the Legislature investing them with such authority when the contingencies mentioned in the statutes arise. There is no delegation of authority to the chief clerks by the secretary of state and the comptroller. In truth and in fact, the secretary of state and the comptroller are impotent to prevent the chief clerks from thus performing the duties of those offices in the contingencies of the statutes authorizing them to act. The chief clerks have the same authority to perform the duties of those offices in those contingencies that the secretary of state and comptroller have to perform them at all other times - the authority of the Legislature. The chief clerks are public officers in the same sense and created by the same legal authority as other statutory officers of state."

The word "hearing", as used in the Securities Act, and as used in this opinion, contemplates that proceeding wherein evidence is heard and considered by the officer clothed with the power of decision, and where the finding or decision is made by that officer and not another. It does not necessarily exclude the ministerial or administrative aid of others in the assembling of testimony for the consideration of the officer clothed with jurisdiction to hear, but the judicial conception of the word "hearing" necessarily requires that that officer must consider the testimony, make his findings thereon, and render his order, judgment or decree in respect the matter in controversy.

Chief Justice Hughes, in the case of Morgan v. United States, has written what may well be considered the last word

upon that subject.  He says:

"A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding.  Hence it is frequently described as a proceeding of a quasi-judicial character.  The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.  The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous consideration which in other fields might have play in determining purely executive action.  The 'hearing' is the hearing of evidence and argument.  If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given.

"There is thus no basis for the contention that the authority conferred by § 310 of the Packers and Stockyards Act is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order.  In such a view, it would be possible, for example, for one official to hear the evidence and argument and arrive at certain conclusions of fact, and another official who had not heard or considered either evidence or argument to overrule those conclusions and for reasons of policy to announce entirely different ones.  It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order.  For the weight ascribed by the law to the findings -- their conclusiveness when made within the sphere of the authority conferred -- rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify.  That duty cannot be performed

by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

"This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred.

"* * * *."  (298 U. S. 468)

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By s/Ocie Speer
    Ocie Speer
    Assistant

OS-MR-wc

APPROVED APR 12, 1941
s/Glenn R. Lewis
(Acting)  ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman